NIHAT DENIZ BAYRAMOGLU, ESQ. (Nevada. Bar No. 14030)
Deniz@bayramoglu-legal.com
GOKALP BAYRAMOGLU, ESQ. (Nevada Bar No. 15500)
Gokalp@bayramoglu-legal.com
**BAYRAMOGLU LAW OFFICES LLC**
1540 West Warm Springs Road, Suite 100
Henderson, Nevada 89014
Telephone: 702.462.5973
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHENZHEN PEISHI ADVERTISING MEDIA CO., LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>LIPOO-US, a Chinese entity; Goyzyqi, a Chinese entity; Tinnije, a Chinese entity; Liwuwer, a Chinese entity; qianyechuanmei, a Chinese entity; MASONVAC Direct, a Chinese entity; Enraek, a Chinese entity; FLYENG, a Chinese entity; and AGOT Direct, a Chinese entity,<br><br>Defendants. | Case No.: 2:26-cv-03326<br><br>**COMPLAINT FOR PATENT INFRINGEMENT** |

Plaintiff Shenzhen Peishi Advertising Media Co., Ltd. ("Plaintiff") brings this action against LIPOO-US; Goyzyqi; Tinnije; Liwuwer; qianyechuanmei; MASONVAC Direct; Enraek; FLYENG; and AGOT Direct (collectively, the "Defendants") for infringement of United States Patent No. 12,324,440 B1 and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

2. This Court may exercise personal jurisdiction over each Defendant because each Defendant has purposefully directed commercial activities towards consumers throughout the United States, including Nevada, through e-commerce stores on the third-party online marketplace platform, Amazon (the "Platform") operating under the seller aliases identified in **Exhibit 1**. Specifically, each Defendant has targeted sales to the United States, and offered the Accused Products for sale to consumers in Nevada, by operating these e-commerce stores (the "Online Stores") that target United States consumers, offering to ship and shipping, to the United States offering to sell and selling products which infringe Plaintiff's patented invention, to residents of Nevada and this District, and accepting payment in U.S. dollars.

3. Through the Nevada directed conduct described above, including offering the Accused Products for sale to Nevada consumers and completing transactions resulting in delivery of the Accused Products into this District, each Defendant has established sufficient minimum contacts with Nevada such that the exercise of personal jurisdiction comports with due process and does not offend traditional notions of fair play and substantial justice.

4. Each of the Defendants systematically offers products infringing on Plaintiff's patent through the Amazon platform to residents of Nevada and this District. Plaintiff, through its counsel, placed an order with each Defendant for an Accused Product through the Defendant's respective Online Store for shipment to an address in Nevada and within this District. Each Defendant accepted the order and caused the Accused Product to be shipped and delivered to the Nevada address. See **Exhibit 6.** Plaintiff's claims therefore arise directly from each Defendant's commercial activities purposefully directed toward this District.

5. Venue is proper in this District as to each foreign Defendant pursuant to 28 U.S.C. §§ 1391(c)(3) and 1400(b). A defendant not resident in the United States may be sued in any judicial district, and the venue restrictions applicable to domestic corporations under § 1400(b) do not apply to foreign defendants. See *In re HTC Corp.*, 889 F.3d 1349, 1357–60 (Fed. Cir. 2018).

6. In the alternative, to the extent any Defendant contends that it is not subject to personal jurisdiction in Nevada or any other State's courts of general jurisdiction, this Court may exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) because Plaintiff's claims arise under federal law, the Defendants have sufficient contacts with the United States as a whole, and the exercise of jurisdiction is consistent with the United States Constitution and laws.

## INTRODUCTION

7. This action is filed by Plaintiff to stop Defendants from making, using, offering for sale, selling, and/or importing into the United States unauthorized products that infringe Plaintiff's patented invention, namely automatic smoker products (the "Accused Products"), in violation of 35 U.S.C. § 271.

8. Foreign infringers, such as the Defendants, take advantage of the anonymity and mass reach afforded by the Internet and the cover provided by international borders, to violate a U.S. rights holder's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation.

9. Plaintiff has been, and continues to be, irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented invention and through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

## THE PARTIES

### Plaintiff

10. Plaintiff is a company organized under the laws of the People's Republic of China.

11. Plaintiff owns all right, title, and interest in United States Patent No. 12,324,440 B1, entitled "Automatic Smoker" (the "'440 Patent"), including the right to sue for infringement and recover damages for infringement occurring after Plaintiff acquired ownership. A true and correct copy of the '440 Patent is attached as **Exhibit 2**.

12. On August 22, 2025, the sole named inventor, Shaoyan Zheng, executed a written assignment transferring all right, title, and interest in the ’440 Patent to Plaintiff. The assignment was recorded with the United States Patent and Trademark Office. A true and correct copy of the assignment is attached as **Exhibit 3**.

13. Plaintiff has statutory standing to bring this action under 35 U.S.C. §§ 100(d) and 281 as the legal owner of the patented invention. Plaintiff obtained ownership of the ‘440 Patent through assignment from the sole named inventor of the ‘440 Patent prior to the filing of this Complaint.

14. The ‘440 Patent has a priority date of September 14, 2024.

15. The ‘440 Patent was issued on June 10, 2025.

16. The ‘440 Patent is valid and enforceable, was valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282.

17. Plaintiff designs, sources, and markets automatic electronic cocktail-smoker products. Plaintiff sells a product that practices the '440 Patent through its own website and e-commerce store. An example of Plaintiff's product is shown below:




*Figure 1. Plaintiff's Automatic Smoker Product*

18. Claim 1 of the '440 Patent recites:

An automatic smoker comprising:

a smoker body;

a pipe having a combustion chamber, wherein an inner wall of the combustion chamber is defined with at least one smoke outlet port; and

a base, wherein the pipe is arranged between the smoker body and the base, the smoker body and the base are detachably assembled, and the smoker body and the base are configured to secure the pipe therebetween during assembly; and

wherein the smoker body comprises:

a casing comprising a housing and a bottom cover, wherein the housing has a mounting cavity, the bottom cover is connected to one side of the housing close to the base, and the bottom cover is defined with an air inlet hole;

a thermal insulation cover, arranged on one side of the bottom cover away from the housing and connected to the bottom cover, wherein the thermal insulation cover is configured to open or close the combustion chamber, and the thermal insulation cover is defined with an air inlet port; and

an automatic igniter, arranged in the mounting cavity and connected to the bottom cover, wherein the automatic igniter comprises an ignition needle, the ignition needle penetrates the bottom cover and is accommodated in the air inlet port, a gap is formed between the bottom cover and a side wall of the air inlet port, and the ignition needle extends into the combustion chamber and is configured to ignite a combustion medium within the combustion chamber.

**Defendants**

19. Defendants are individuals or business entities who own and/or operate one or more e-commerce stores including at least the Online Stores identified in **Exhibit 1**. On information and belief, Defendants reside and/or operate outside the United States in foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations.

20. Plaintiff's pre-suit investigation has revealed that one or more of the Defendants have provided false or inaccurate business names and addresses when they registered for their

e-commerce stores. Such tactics are used to conceal their true identities, the full scope of their infringing operations and their relatedness to the other Defendants. As such, this makes it virtually impossible for Plaintiff to discover the Defendants' true identities and the interworking of their infringement network scheme.

21. Most third-party online marketplace platforms, including the Amazon Platform, do not subject new sellers to verification or require them to confirm their identities, which allows infringers to use fake or inaccurate names, business information, and addresses when creating their e-commerce stores on these online marketplace platforms.[1] These third-party online marketplace platforms also generally do not require a seller to identify any underlying business entity, thus infringers are able to create multiple profiles and e-commerce stores that appear unrelated even though they are commonly owned and operated.[2]

## JOINDER OF THE DEFENDANTS

22. Generally, defendants may be joined in a single action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). However, joinder in patent cases is governed by 35 U.S.C. § 299, which allows joinder of defendants if: (1) relief in the same transaction or occurrence relates to the offering for sale or selling of the same accused product or process; and (2) questions of fact common to all defendants will arise in the action. *See* 35 U.S.C. § 299(a); *CG Tech. Dev., LLC v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 142090, at *4 (D. Nev. October 13, 2016).

23. The Federal Circuit has clarified that joinder of independent defendants is appropriate where the accused products or processes are "the same in respects relevant to the patent." *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012). However, the sameness of the

[1] U.S. Department of Homeland Security, Report on Combating Trafficking in Counterfeit and Pirated Goods, January 24, 2020, (available at: https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf).

[2] *Id.* at 39.

accused products is a necessary but not sufficient condition to satisfy the transaction-or-occurrence test *Id*. at 1357. Under both Federal Rule of Civil Procedure 20 and 35 USCS § 299, claims against independent defendants cannot be joined unless the facts underlying each claim of infringement share an "aggregate of operative facts." *Id*. at 1358. To satisfy this standard, there must be shared, overlapping facts giving rise to each cause of action, rather than merely distinct, coincidentally identical facts. *Id*. at 1359.

24. This is not a case where joinder is sought based solely on allegations that each Defendant has infringed the same patent, nor does it solely rely on allegations of patent infringement. Rather, the Accused Products are the same in all respects relevant to the '440 Patent.

25. Specifically, each infringing product features a circuit board; ignition needle passing through the bottom cover into the thermal insulation cover's air inlet port, with a gap for airflow, thereby infringing Plaintiff's Patent in the same manner.

26. The Online Stores operating under the Seller Aliases share identifiers establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. For example, Defendants Goyzyqi , Tinnije, Liwuwer, and Enraek share identical or near identical exterior designs and controls.

27. As mentioned above, such seller alias registration patterns are one of many common tactics used by e-commerce store operators like the Defendants to conceal their identities and the full scope and interworking of their infringement operation, and to avoid being shut down. Operating under various seller aliases also gives the impression that the Defendants are multiple, separate entities when listed on multiple-defendant enforcement action. By giving the appearance that the seller aliases are all unrelated entities, infringers, like the Defendants, know they are creating a potential joinder issue for any multi-defendant enforcement effort, thereby further thwarting facing liability.

28. The Defendants' intentional technique of hiding behind multiple Seller Aliases to make enforcement more difficult is used to perpetuate illegal patent infringing activities. Absent joinder of each Defendant, the Defendants' strategy to avoid liability will be effective because individual lawsuits are costly to file and burdensome to the courts. Hence, each Defendant is joined in this action because it is highly likely that they are working with the other Defendants or are not separate entities, and that they are only listed as separate entities to avoid enforcement of U.S. patent law.

29. Each of the Defendants unfairly benefits from operating in the midst of a swarm of other infringers, each individually, and all collectively, violating Plaintiff's '440 Patent and/or through misuse of e-commerce. This is a strategy that infringers use to evade enforcement efforts, thus keeping their operations moving, because the swarm is too large to go after individually, and because as one gets shut down, the infringer can open five more, and transfer money in between them if noticed of a suit like this one.

## DEFENDANTS' UNLAWFUL CONDUCT

30. The success of the Plaintiff's automatic smoker product has resulted in significant infringement of Plaintiff's '440 Patent. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Plaintiff has identified numerous e-commerce stores on the Platform offering for sale automatic smoker products that infringe the '440 Patent, including the Online Stores. Screenshots of each Defendant's automatic smoker product and links to each Defendant's listing on the Platform are attached in **Exhibit 1**.

31. Defendants have targeted sales to Nevada residents by setting up and operating the Online Stores that target United States consumers using one or more Seller Alias, offer shipping to the United States, including Nevada, accept payment in U.S. dollars and, sell and/or offer for sale Accused Products to residents of Nevada.

32. Online marketplace platforms like the Platform used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing

infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020) attached as **Exhibit 4**; *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." *See* Exhibit 5 at p. 22 and 11, respectively. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. *Id.* at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. *See* Exhibit 5 at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *See* Exhibit 4 at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id.* at p. 161.

33. The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown procedures impact Plaintiff's enforcement efforts when trying to assert its patent rights.

34. Infringers such as Defendants also typically operate under multiple payment accounts so that they can continue operation despite Plaintiff's enforcement. Infringers like the Defendants often maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

35. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Accused Products in the same transaction, occurrence, or series of transactions or occurrences, without any authorization or license from Plaintiff, and have knowingly and willfully offered for sale, sold, and/or imported into the U.S. including Nevada for subsequent resale or use, products that infringe directly and/or indirectly the ’440 Patent, and continue to do so via the Online Stores.

36. Defendants’ unauthorized use and/or manufacturing of the invention claimed in the ‘440 Patent in connection with the distribution, offering for sale, and sale of the infringing automatic smoker products into the United States, including Nevada, is likely to cause, and has caused, loss of market share and erosion of Plaintiff’s patent rights and is irreparably harming Plaintiff.

## COUNT I

## PATENT INFRINGEMENT (35 U.S.C. § 271)

37. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-36 above.

38. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Accused Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiff’s Patent.

39. Each Defendant sells its Accused Products to consumers in the United States.

40. Each of the Products being sold by each Defendant incorporates each of the elements of at least one claim in the ‘440 Patent. Accordingly, the Accused Products infringe upon the Plaintiff’s Patent.

41. More particularly, upon information and belief, Defendants have infringed and continue to infringe at least Claim 1 of the ‘440 Patent because the Accused Products include every limitation of Claim 1.

42. Defendants do not have authority or license from Plaintiff to sell the Accused Products.

43. Sales of the Accused Products cause additional harm to Plaintiff because sales of the Accused Products are competitive with products imported, sold, and offered for sale in the United States by Plaintiff.

44. As a direct and proximate result of Defendants’ infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants’ infringement of the Plaintiff’s Patent in connection with the offering to sell, selling, or importing of products that infringe the Plaintiff’s Patent, including such acts into the State of Nevada, is irreparably harming Plaintiff. Defendants’ wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention as well as the lost sales and loss of repeat sales stemming from the infringing acts.

45. Plaintiff is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants from infringing the patent-in-suit.

46. The Defendants’ acts of infringement of the ‘440 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation pursuant to 35 U.S.C. § 284.

47. The Defendants’ acts of infringement of the ‘440 Patent have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

48. To the extent this case is found to be exceptional, Plaintiff is entitled to an award of attorneys’ fees pursuant to 35 U.S.C. § 285.

49. Defendants committed the conduct alleged herein maliciously, oppressively, and/or fraudulently, with the wrongful intent of injuring Plaintiff, and with willful and conscious disregard of Plaintiff's rights. Plaintiff is, therefore, entitled to an award of punitive and exemplary damages.

**COUNT II**

**INDUCED PATENT INFRINGEMENT (35 U.S.C. § 271(b))**

50. Plaintiff incorporates Paragraphs 1 through 36 as if fully set forth here.

51. Defendants manufactured and/or sold to consumers in the United States the Accused Product.

52. Upon information and belief, Defendants, knowingly, and intentionally induce infringement of the '440 Patent by making, using, selling, offering for sale, importing, and/or otherwise supplying products and/or services including the Accused Product to third parties, with the knowledge and specific intent that such third parties will use, sell, offer for sale, and/or import, products and/or services supplied by Defendants, including without limitation the Accused Product, to directly infringe the '440 Patent

53. Upon information and belief, Defendants encourage, instruct, enable and otherwise aid and abet third parties to use the Accused Product in a manner that directly infringes the '440 Patent.

54. Upon information and belief, each of the Defendants specifically intends that its customers, and/or users use the Accused Products in such a way that directly infringes the '440 Patent by, at a minimum, advertising, enticing, encouraging, instructing, and aiding and abetting its customers and/or users, through the publication and dissemination of marketing materials, detailed operational manuals, Internet sites, and/or technical assistance related to the Accused Products, to use, sell, offer for sale, and/or import, products and/or services supplied by each of the Defendants, including the Accused Products, to directly infringe the '440 Patent.

55. Upon information and belief, Defendants knew and know that their actions in relation to the Accused Products, would induce, have induced, and continue to induce direct

infringement of the ’440 Patent by third parties, including but not limited to Defendants’ customers and/or users of the Accused Products.

56. As a direct and proximate result of Defendants’ infringement, Plaintiff has suffered and continues to suffer damages in an amount to be determined, and Plaintiff is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

57. Plaintiff is entitled to preliminary and permanent injunctive relief under 35 U.S.C. § 283 because Defendants’ infringement has caused and threatens continuing irreparable harm for which Plaintiff has no adequate remedy at law.

58. Plaintiff further seeks enhanced damages to the extent the evidence establishes willful or egregious infringement, and an award of attorneys' fees to the extent warranted by the evidence and applicable law under 35 U.S.C. §§ 284 and 285.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment in its favor and against Defendants as follows:

A. A judgment that each Defendant has directly infringed at least Claim 1 of the '440 Patent in violation of 35 U.S.C. § 271(a);

B. A judgment that each Defendant has induced infringement of at least Claim 1 of the '440 Patent in violation of 35 U.S.C. § 271(b);

C. A permanent injunction enjoining each Defendant along with its officers, agents, servants, employees, attorneys, successors, affiliates, and all persons in active concert or participation with any of them who receive actual notice of the injunction from infringing the '440 Patent;

D. An award of damages adequate to compensate Plaintiff for Defendants’ infringement, in no event less than a reasonable royalty, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

E. An accounting and award of supplemental damages for infringing activity not included in the damages presented at trial;

F. Enhanced damages under 35 U.S.C. § 284 to the extent warranted by the evidence;

G. A determination that this case is exceptional and an award of Plaintiff's reasonable attorneys' fees under 35 U.S.C. § 285, to the extent warranted;

H. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 9, 2026

Respectfully submitted,

**BAYRAMOGLU LAW OFFICES LLC**

By: */s/ Nihat Deniz Bayramoglu*
Nihat Deniz Bayramoglu (NV Bar No. 14030)
Gokalp Bayramoglu (NV Bar No 15500)
deniz@bayramoglu-legal.com
gokalp@bayramoglu-legal.com
1540 West Warm Springs Road Ste. 100
Henderson, NV 89014
(702) 462-5973
*Attorneys for Plaintiff*